UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ELIZABETH N. JONES,<br>ESTATE OF HARRY S. JONES<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL ASTRUE, Commissioner of<br>the Social Security Administration,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. H-06-3982<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of social security benefits is Plaintiffs' Motion for Summary Judgment (Doc. No. 10). After careful consideration the record, the filings, and the applicable law, the Court finds that the Motion should be denied.

### I.   BACKGROUND

Harry Jones, the late husband of Plaintiff Elizabeth Jones, died on August 13, 2001, and Mrs. Jones filed for Widows Insurance Benefits on April 22, 2002. Because Mrs. Jones was 64 years old at the time of her application, the Social Security Administration ("SSA") initially determined that, under Sections 202(e) and (j) of the Social Security Act, 42 U.S.C. § 402(e),(j), she was not eligible for retroactive benefits. Plaintiffs requested reconsideration of this decision, but the SSA denied the request (R. 13), and an Administrative Law Judge ("ALJ") subsequently affirmed the initial decision (R. 16). The SSA Appeals Council denied Plaintiffs' request for review of the ALJ's decision (R. 3), thereby making the ALJ's decision the final decision of the Commissioner of the SSA. Plaintiffs appeal pursuant to 42 U.S.C. § 405(g).

Plaintiffs' argument on appeal is based on their allegations that numerous applications for retirement benefits were filed by and on behalf of Mr. Jones before his death. Plaintiffs' position is that these filings entitle Mrs. Jones to a deemed filing date of August 2001, the date of Mr. Jones's death, which is seven months earlier than the filing of her formal application for widow's benefits in April 2002.

It is undisputed that Mr. Jones died without filing a formal application for retirement benefits with the SSA, and without filing a letter of intent to apply for those benefits.[1] Curiously, however, in the decade before his death, Mr. Jones allegedly made a series of as many as twelve visits to SSA offices, ostensibly to inquire into the possibility of applying for retirement benefits. No explanation of these visits from Mr. Jones exists in the record, but Mrs. Jones testified under oath that Mr. Jones was reluctant to file for benefits because he felt the payments due to him were excessive, and he was therefore worried that accepting the payments was unlawful. (R. 185-86.) She also speculated that he used these visits to attempt to negotiate a lesser benefits eligibility (*see* R. 209-11), and described her late husband as "a little bit overly scrupulous about everything" (R. 185-86). Whatever the reason for Mr. Jones's reluctance to file for benefits, his disinclination to apply is corroborated by a report of contact provided by the SSA (the "contact report") indicating that one month before his death, during his last visit to an SSA office, Mr. Jones refused to file an application for benefits. This refusal was despite an SSA clerk's warning

---

[1] The only application for retirement benefits in the record is dated May 25, 2004, and is signed by Plaintiff. (R. 112.) However, Mr. Jones died in August 2001, and the social security regulations do not provide for an application for retirement benefits filed after the claimant's death by his widow. 20 C.F.R. § 404.615 states, "A claimant must be alive at the time an application is filed." The only exceptions to this general rule are for those claimants who were eligible for disability benefits, who filed a written statement showing intent to claim benefits before they died, or who were given misinformation about filing procedures by the SSA before their death. *Id.* Mr. Jones fits none of these exceptions. Moreover, 20 C.F.R. § 404.612, entitled "Who may sign an application," limits surrogate signatures to cases involving living claimants who are children or infirm, or in the case of deceased claimants, to those claimants who are claiming disability benefits, who filed a written statement showing an intent to claim benefits before they died, or who were given misinformation about filing procedures by the SSA before their death. In all other cases, "A claimant who is 18 years or over, mentally competent, and physically able to do so, must sign his or her own application." *Id.* For the reasons offered herein, Mr. Jones did not fit any of the categorical exceptions to this rule. This posthumous application was therefore legally ineffective.

2

about the adverse consequences of failing to apply. (R. 26.) The contact report, filled out by an SSA employee named "C Butler," states that Mr. Jones "refuse[d] to sign [the] application," and continues, "I told Mr[.] Jones that his decision not to file was disadvantageous." (R. 26.)

Plaintiffs nonetheless offer a variety of arguments intending to show that an application was effectively filed as a matter of either fact or law. They argue that Mr. Jones did indeed apply for benefits. (Pls.' Br. 2.) They argue Mrs. Jones' various attempts to apply for retirement benefits on behalf of her husband were effective as a matter of law, either directly or because she received misinformation from the SSA. (Pls.' Br. 12-13.) They argue that various hospital admissions statements operated as an application for benefits, especially one from 1998. (Pls.' Br. 2.) Finally, they argue that even if no application was filed as a matter of fact, Mr. Jones should be deemed to have shown the requisite intent to apply by virtue of his repeated visits to SSA offices in the years before his death. (Pls.' Br. 2.) In addition, Plaintiffs ask the Court to subpoena information from the SSA to develop the record surrounding the contact report relating to Mr. Jones's July 2001 refusal to apply for retirement benefits at an SSA office. (Pls.' Br. 20-21.)

Before filing this appeal, Plaintiffs presented substantially the same arguments at a hearing before an ALJ. Mrs. Jones testified at that hearing, as did two witnesses: Edward Cogburn, a colleague of Mr. Jones and the attorney who handled Mr. Jones's estate, and Cynthia Sepcie, the daughter of Mr. and Mrs. Jones. In relevant part, Mr. Cogburn testified to a ninety minute phone call with Mr. Jones that took place the week of Mr. Jones's death. (R. 178.) Mr. Cogburn described Mr. Jones's mind as "very clear" during that conversation, and testified that, "from my experience in talking to him [over the course of a longtime relationship], he . . . had no cognitive difficulties at all." (R. 178-79.) As for Ms. Sepcie, her testimony largely corroborated

Mrs. Jones's factual allegations. She confirmed that Mr. Jones had been reluctant to apply for retirement benefits because, as she described it, "he didn't want to take more than he felt he deserved." (R. 208.) She also testified that Mrs. Jones had tried on numerous occasions to apply for benefits on behalf of Mr. Jones, all in 1998 or 1999. (R. 205.) She further acknowledged, however, that she did not recall accompanying her mother on any visits to SSA offices. (R. 205.)

Based on the evidence before him, the ALJ denied Plaintiffs' request for benefits. He noted that Mr. Jones had not filed a written application or statement of intent to file for retirement benefits, and that Mrs. Jones had not filed a statement of intent to file for widow's benefits at any time before filing her April 2002 application. (R. 16.) In so ruling, the ALJ noted that the contact report from the SSA was insufficient to establish either Mr. Jones's intent to file for retirement benefits or Mrs. Jones's intent to file for widow's benefits. (R. 14.) He noted that there was no evidence of any misinformation from the SSA to Mrs. Jones regarding filing procedures. (R. 15.) With regard to Mr. Jones's alleged visits to the SSA offices prior to July 2001, the ALJ stated that no evidence existed of those visits other than Mrs. Jones's allegations. (R. 15.) Finally, discussing Mrs. Jones's alleged attempts to apply for benefits on her husband's behalf, the ALJ found that "telephone calls and oral requests to sign an application cannot serve as a written statement indicating intent to claim benefits" as required by 20 C.F.R. § 404.630. (R. 15.) The ALJ also denied Plaintiffs' request to subpoena various SSA district office employees, stating, without elaboration, that "no additional information is needed." (R. 12.)

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

### B. Standard of Review

Judicial review of an ALJ's denial of social security benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *see also Harris v. R.R. Ret. Bd.*, 3 F.3d 131, 132-33 (5th Cir. 1993). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (internal quotation marks

omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C.   Plaintiffs' Arguments

For the following reasons, the Court finds that the ALJ's opinion in this matter was supported by substantial evidence and used the proper legal standards, and that Plaintiffs' arguments to the contrary are unpersuasive.

#### 1. Application / Letter of Intent to Apply

The Court agrees with the ALJ that the record lacks evidence of any application or written statement of intent to file for benefits from either Mr. or Mrs. Jones before Mrs. Jones's application for widow's benefits in April 2002. With only one exception, the social security regulations require claimants to file an application to receive benefits. 20 C.F.R. § 404.603 ("[Y]ou must file an application to become entitled to benefits."). As the ALJ accurately noted, there is no such application from Mr. Jones in the record, nor is there evidence of such an application from Mr. Jones ever having been filed. The ALJ also accurately stated that there is no evidence of an application for widow's benefits from Mrs. Jones before April 2002.

Nor can Mrs. Jones avail herself of the one exception to the requirement of an application, specifically:

> If a *written* statement, such as a letter, indicating your intent to claim benefits either for yourself or for another person is filed with us . . . we will use the filing date of the written statement as the filing date of the application . . . .

20 C.F.R. § 404.630 (emphasis added.) As with the application requirement, the ALJ properly noted that the record contains no evidence of such a written letter of intent to file from either Mr. of Mrs. Jones.

### 2. Constructive or Inferred Intent to Apply

As for Plaintiffs' contention that Mr. Jones, by virtue of his numerous alleged visits to SSA offices, should be deemed to have applied for his retirement benefits, the Court agrees with the ALJ that these visits, if any, are insufficient. First, the evidence does not prove that Mr. Jones visited the SSA offices as frequently as Mrs. Jones alleges. The only documentary evidence supporting this claim is a letter from the SSA stating, "There is an indication that some contact was made between Mr. Jones and Social Security regarding retirement in 1995." (R. 75.) This document clearly falls short of establishing that Mr. Jones visited SSA offices repeatedly, and the ALJ was under no obligation to accept this vague document as persuasive, much less conclusive. The Court acknowledges that Mrs. Jones's testimony, provided under penalty of perjury, counts as additional evidence of his visits to the SSA. But if the ALJ discounted the probative value of this testimony in making his decision, he did so properly: neither Mrs. Jones nor Ms. Sepcie is a disinterested witness, as each stands to gain, directly or indirectly, from the award of benefits.

Second, if Mr. Jones's alleged visits to the SSA offices did occur, they are insufficient as a matter of law to constitute an application for benefits: for better or for worse, 20 C.F.R. § 404.630 requires a *written* statement of intent, and the Court is aware of no authority to the contrary. Third, even if there were legal authority to support Plaintiffs' argument for constructive or inferred intent to apply, the ALJ had substantial evidence to find that Mr. Jones's actions did not permit that inference. The SSA contact report that the ALJ relied on shows that Mr. Jones refused to file for retirement benefits in July 2001, just one month before his death. Mr. Jones's decision not to apply may be inscrutable, but the contact report clearly shows that he was advised of the adverse consequences of his refusal. In fact, Mrs. Jones's own testimony

about the July 2001 visit corroborated the fact that Mr. Jones declined to apply for benefits despite the urging of the SSA clerk. (R. 209-10.) Moreover, there is substantial evidence in the record that Mr. Jones made his decision knowingly and while of sound mind: Ms. Sepcie's testimony confirmed that Mr. Jones had personal reasons, however enigmatic, for his refusal to apply, and Mr. Cogburn's disinterested testimony indicated that Mr. Jones was capable of extended conversation without noticeable cognitive deficiency in the weeks before his death. It is true that Mrs. Jones's testimony casts some doubt on whether Mr. Jones intended to apply for benefits in July 2001 by characterizing his decision not as refusal but as a desire to gather more documents before applying. (R. 210.) Finally, even if an oral statement of intent did suffice under 20 C.F.R. § 404.630, which it does not, the Court cannot say that the probative value of Mrs. Jones's testimony outweighs the contrary evidence in the record. More to the point, the Court may not upset the ALJ's weighing of the evidence unless the ALJ lacked a substantial basis for his findings, and in this case, the evidence reviewed above is clearly substantial enough to support the ALJ's finding that Mr. Jones lacked the requisite intent to apply for benefits.

### 3. Plaintiffs' Other Arguments

Plaintiffs' other contentions are similarly unpersuasive. Mrs. Jones's allegation that she was provided misinformation by the SSA with regard to her filing rights, or that she was otherwise refused in her attempts to complete an application on her husband's behalf before his death, is also unsupported by the record. As the ALJ noted, other than Mrs. Jones's own testimony, the only direct evidence of the SSA's communication with Mrs. Jones regarding filing procedures is the contact form, and that form shows that the SSA advised Mr. Jones to file his application for benefits immediately.[2] The contact form provides substantial evidence

---

[2] Ms. Sepcie testified that Mrs. Jones had been refused in her attempts to file for benefits on behalf of Mr. Jones, but she also testified that she did not have any personal knowledge of those attempts separate from what Plaintiff told

supporting the ALJ's finding, and the Court may not reweigh it against Mrs. Jones's contrary testimony. Moreover, Mrs. Jones alleges no attempts to apply for her husband's retirement benefits between the July 2001 visit and the time of his death. Mrs. Jones does allege that she attempted to apply for retirement benefits (but not widow's benefits) immediately after Mr. Jones' death (R. 211), but this posthumous application, if any, was legally ineffective. *See* 20 C.F.R. § 404.615; *see also* 20 C.F.R. §§ 404.612, 404.630.

Plaintiffs' argument that various hospital admission forms and other hospital records in evidence (*see* R. 75-93) served as an application for retirement benefits is also without support in the record. While the ALJ's opinion did not address these forms explicitly, his statement that "there is no evidence of any written statements indicating intent to file" applies to the hospital records. Plaintiffs' argument relies on 20 C.F.R. § 404.632, which states, "A statement (generally a hospital admission form) filed with a hospital may serve as a written statement under § 404.630 . . . ." As evidenced by the reference to § 404.630, however, § 404.632 requires not just a statement related to social security benefits, but a statement of intent to apply for those benefits. Such intent is the crux of § 404.630, and through the reference to that section in § 404.632, it is also the crux of the section that Plaintiffs rely on. Contrary to Plaintiffs' position, no statement in the hospital forms indicates the requisite intent. The closest any form comes is a 1998 admission form stating, "I request that payment of authorized [social security] payments be made on my behalf." (R. 91.) This statement, which is part of a hospital form entitled "Conditions of Admission/Treatment," and which appears under the heading "Medicare Assignment," at most shows an intent to assign to the hospital any social security benefits due Mr. Jones for his treatment. It does not show his intent to apply for benefits. While the ALJ's

---

her. Ms. Sepcie's testimony therefore is of little probative value in determining whether the SSA misinformed Mr. Jones or Plaintiff, or whether the SSA refused any application from, or on behalf of, Mr. Jones.

opinion would certainly have been stronger had he been more explicit in his discussion of these hospital forms, the Court's limited review does not require that the ALJ discuss every piece of evidence in the record; it only requires that substantial evidence exist to support the ALJ's finding. In light of the substantial evidence discussed herein showing that Mr. Jones lacked the requisite intent to apply, this Court will not upset the ALJ's weighing of the evidence based on the hospital records in evidence.

Finally, the Court finds that the ALJ's refusal to subpoena more information from the SSA regarding the July 2001 contact form was appropriate. "It is the duty of the administrative law judge to develop the facts relative to a claim for benefits fully and fairly." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). This duty, however, is not an independent one, but instead a logical corollary of the requirement that an ALJ's decision be based on substantial evidence. *See id.* ("When [the ALJ] fails in that duty, he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence." (citations omitted)). The Court has already found that the contact form, Mrs. Jones's testimony, and Ms. Sepcie's testimony provided substantial evidence for the ALJ to find that Mr. Jones did not have the requisite intent to apply as of his July 2001 visit to an SSA office; the ALJ therefore owed no further duty to develop the record as to Mr. Jones's intent in July 2001.[3]

Having disposed of Plaintiffs' many arguments about prior actual or constructive applications for either retirement or widow's benefits, it is clear that the ALJ was correct in his decision to deny Mrs. Jones any Widow's Insurance Benefits earlier than April 2002. Mrs. Jones filed an application for Widow's Insurance Benefits on April 22, 2002. Because she was under

---

[3] Moreover, as a practical matter, the Court is hard-pressed to believe that the SSA would be able to provide reliable, probative information about a conversation with Mr. Jones seven years after the fact. Even if it could, the Court strongly doubts that the information would be so persuasive as to call into doubt the sufficiency of the evidence upon which the ALJ relied.

opinion would certainly have been stronger had he been more explicit in his discussion of these hospital forms, the Court's limited review does not require that the ALJ discuss every piece of evidence in the record; it only requires that substantial evidence exist to support the ALJ's finding. In light of the substantial evidence discussed herein showing that Mr. Jones lacked the requisite intent to apply, this Court will not upset the ALJ's weighing of the evidence based on the hospital records in evidence.

Finally, the Court finds that the ALJ's refusal to subpoena more information from the SSA regarding the July 2001 contact form was appropriate. "It is the duty of the administrative law judge to develop the facts relative to a claim for benefits fully and fairly." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). This duty, however, is not an independent one, but instead a logical corollary of the requirement that an ALJ's decision be based on substantial evidence. *See id.* ("When [the ALJ] fails in that duty, he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence." (citations omitted)). The Court has already found that the contact form, Mrs. Jones's testimony, and Ms. Sepcie's testimony provided substantial evidence for the ALJ to find that Mr. Jones did not have the requisite intent to apply as of his July 2001 visit to an SSA office; the ALJ therefore owed no further duty to develop the record as to Mr. Jones's intent in July 2001.[3]

Having disposed of Plaintiffs' many arguments about prior actual or constructive applications for either retirement or widow's benefits, it is clear that the ALJ was correct in his decision to deny Mrs. Jones any Widow's Insurance Benefits earlier than April 2002. Mrs. Jones filed an application for Widow's Insurance Benefits on April 22, 2002. Because she was under

---

[3] Moreover, as a practical matter, the Court is hard-pressed to believe that the SSA would be able to provide reliable, probative information about a conversation with Mr. Jones seven years after the fact. Even if it could, the Court strongly doubts that the information would be so persuasive as to call into doubt the sufficiency of the evidence upon which the ALJ relied.

65 at that time, she does not qualify for retroactive benefits, 42 U.S.C. § 402(j), and therefore her first month of eligibility was the month her application was filed, 42 U.S.C. § 402(e).

### III. CONCLUSION

The Court finds that the ALJ's determinations in the instant case were supported by substantial evidence, and that the ALJ properly applied the relevant legal standards. Therefore, Plaintiffs' Motion for Summary Judgment (Doc. No. 10) is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** this 24th day of March, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.